Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Nabeela M. Hanif
nhanif@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Karena K. Ioannou
kioannou@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiffs*
*Moonbug Entertainment Limited and*
*Treasure Studio Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO INC., <br><br> *Plaintiffs* <br><br> v. <br><br> AMA_STORE, BBBRIDGE2019, BESTPRODUCTS4YOU, BIMBA_ONLINE, COMEBBON, FEELGOOD_STORES, GITSAMAR0, GTFSTORE, HAPPYHOME-DEPOT, LISHUGUANG001, LUCKYDAY418, MALLAWAARACHCHI.STORE, MWZUK, NGT.H11, QINGYUN1688888, ROSKUM_1328, SEOURS-ASTRO, SHANIKPRASAD0, SHANKA-1987, SINEKAGEEK-73, THARATHAP-0, THIMIRA, THUSHASTORES, URLINENS121, VICTORXING1978 and XUANHU_70, <br><br> *Defendants* | **CIVIL ACTION No.** <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR 1) A TEMPORARY RESTRAINING ORDER; 2) AN ORDER RESTRAINING MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE; AND 5) AN ORDER AUTHORIZING EXPEDITED DISCOVERY** <br><br> **FILED UNDER SEAL** |

## <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION**................................................................................ 1

II.    **STATEMENT OF RELEVANT FACTS**............................................ 3

III.   ARGUMENT ....................................................................................... 3

A.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ................... 3

      1.    **Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)** ................................................................ 4

      2.    **Exercising Personal Jurisdiction Over Defendants Comports with Due Process** ................................................. 10

B.   PLAINTIFFS ARE ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.................................. 10

      1.    **Plaintiffs are Likely to Prevail on the Merits of Their Lanham Act Claims**.................................................... 12

      2.    **Plaintiffs are Likely to Prevail on Their Copyright Act Claims**......... 13

         a)   *Plaintiffs own Valid Copyrights in the CoComelon Works* .......... 14

         b)   *Defendants Infringed the CoComelon Works* ............................... 14

      3.    **Plaintiffs are Likely to Prevail on Their State Law Claims**................ 15

      4.    **Plaintiffs are Entitled to a Presumption of Irreparable Harm and Regardless Have Established They Will Suffer Irreparable Harm in the Absence of an Injunction**.................... 16

      5.    **The Balance of Hardships Favors Plaintiffs**........................................ 18

      6.    **Enjoining Defendants from Using the CoComelon Works and CoComelon Marks Will Serve the Public Interest**.............................. 18

    C.   **PLAINTIFFS ARE ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS** .......................................... 19

      1.    **Defendants' Assets Must be Frozen** ..................................................... 19

      2.    **Defendants' User Accounts and Merchant Storefronts Must be Frozen**.............................................................. 21

D. PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS .......... 21

E.   PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY.................................................................. 23

i

F.    PLAINTIFFS' REQUEST FOR A SECURITY BOND IN THE AMOUNT OF
      $5,000 IS ADEQUATE ................................................................................................ 24

IV.   CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457 (S.D.N.Y. Dec. 28, 1994). ................................... 24

*Allstar Marketing Group, LLC v. 123 Beads Store, et al.*, 19-cv-3184-AJN (S.D.N.Y. Apr. 10, 2019) .......................................................................................................... 6

*Allstar Marketing Group, LLC v. 178623, et al.*, 19-cv-3186-AJN (S.D.N.Y. Apr. 10, 2019) ................................................................................................................................... 6

*Allstar Marketing Group, LLC v. 24x7, et al.*, No. 18-cv-9043-JSR (S.D.N.Y. Oct. 3, 2018) ................................................................................................................................... 6

*Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019) ................................................................................................................................... 6

*Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019) ...................................................................................................................... 6

*Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019) ............................................................................... 6

*Allstar Marketing Group, LLC v. bigbigdream320, et al.*, 19-cv-3182-AJN (S.D.N.Y. Apr. 10, 2019) .......................................................................................................... 6

*Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019) ...................................................................................................................... 6

*Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 (S.D.N.Y. Jul. 26, 2012) ................................................................................................................................... 7

*AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. Apr. 1, 2015) ............................................................................................................ 1, 21, 22

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ..................................................... 24

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733 (S.D.N.Y. Oct. 8, 2010) .................................................................................... 19

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ........................................... 3, 4, 9, 10

*Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830 (S.D.N.Y. May 4, 2004) ............................................................................................... 9

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ................................................................. 8

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) ........................ 18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985) ........................................................ 10

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................ 10

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ........................................ 7

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ............................. 4, 5, 7

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ................................. 4, 5

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) ........................ 16

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 12, 2015) ........................................................................ 21, 22, 23

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996) ........................................ 24

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ............................................ 16

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008) ................... 3

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB),2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ........................................................ 5, 6, 7, 8

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000)) ....................... 12

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991) ....................... 13

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) ............... 13

*FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) .................. 22

*Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988) ........................................ 15

*Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 1, 2016) ........................................................................ 5

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014) ........................................ 20

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ........................... 4, 21

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015) ........................................................ 1

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) ................ 7

*Ideavillage Products Corp. v. 1yuyan1, et al.*, No. 18-cv-10000-NRB (S.D.N.Y. Oct. 30, 2018) ........................................................................ 6

*Ideavillage Products Corp. v. 207058772, et al.*, No. 18-cv-6512-VM (S.D.N.Y. July 19, 2018) ........................................................................ 6

*Ideavillage Products Corp. v. 29shyans2012, et al.*, No. 18-cv-6266-AT (S.D.N.Y. July 11, 2018) ........................................................................ 6

*Ideavillage Products Corp. v. 666668, et al.,* No. 18-cv-6850-CM (S.D.N.Y. July 31, 2018) ...................................................................................................................... 6

*Ideavillage Products Corp. v. 711market, et al.,* No. 18-cv-7832-JMF (S.D.N.Y. Aug. 28, 2018) ...................................................................................................................... 6

*Ideavillage Products Corp. v. Aarhus, et al.*, No. 18-cv-2739-JGK (S.D.N.Y. April 11, 2018) ...................................................................................................................... 7

*Ideavillage Products Corp. v. abc789456, et al.,* No. 18-cv-2962-NRB (S.D.N.Y. April 11, 2018) .............................................................................................................. 7

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099 (JMF) (S.D.N.Y. Nov. 21, 2017) ..................................... 1

*Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG (S.D.N.Y. Feb. 1, 2018) ............................................. 6, 7

*Ideavillage Products Corp. v. longteng, et al.,* No. 18-cv-7329-AT (S.D.N.Y. Aug. 14, 2018) ...................................................................................................................... 6

*Ideavillage Products Corp. v. OhmyGod 1, et al.*, No. 18-cv-9999-RA (S.D.N.Y. Nov. 15, 2018) .............................................................................................................. 6

*In re Vuitton et Fils, S.A.*, 606 F.2d (2d Cir. 1979) ............................................................ 1

*Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018) .............. 7

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................... 3

*JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018) ......... 1, 7

*Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137 (S.D.N.Y. Oct. 24, 2012) ............................................................. 1

*Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) ........................................................ 13

*Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ 5664 (JGK), 2005 U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) ............................................... 9

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) ...................................... 3, 4

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) ...................................... 5

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d Cir. 1992) ...................................................................................................... 12

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d Cir. 2005) ...................................................................................................... 12

*Mattel, Inc. v. 162275898, et al.,* No. 18-cv-8821-AJN (S.D.N.Y. Sept. 26, 2018) .................... 6

*Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427 (S.D.N.Y. Nov. 9, 2018) .................... 6

*Mattel, Inc. v. 2012shiningroom2012, et al.*, No. 18-cv-11648-PKC (S.D.N.Y. Dec. 13, 2018) ............................................................................................................ 6

*Mattel, Inc. v. 2013CheapBuy, et al.*, No. 18-cv-11647-PKC (S.D.N.Y. Dec. 13, 2018) ............. 6

*Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF (S.D.N.Y. Nov. 9, 2018) ............................ 6

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Sept. 26, 2018) ............................ 24

*Mattel, Inc. v. Aaron's Fashion Store, et al.*, Case No. 18-cv-10437-KPF (S.D.N.Y. Nov. 9, 2018) ............................................................................................................ 6

*Mattel, Inc. v. betterlover, et al.*, No. 18-cv-11644-PKC (S.D.N.Y. Dec. 13, 2018) .................... 6

*McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) ......... 7

*Milliken v. Meyer*, 311 U.S. 457 (1940) ........................................................................................ 10

*Mint, Inc. v. Iddi Amad*, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9, 2011) ...................................................................................... 14

*Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745,2015 U.S. Dist. LEXIS 18801 (E.D.N.Y. Feb. 17, 2015) .................................................................................... 17

*Moose Toys Pty LTD, et al. v. adition, et al.*, No. 18-cv-9262-AJN (S.D.N.Y. Oct. 10, 2018) ............................................................................................................ 6

*Moose Toys Pty Ltd. et al., v. 963, et al.*, No. 18-cv-2187-VEC (S.D.N.Y. April 2, 2018) .......... 7

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................................ 23

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) .............. 16

*N. Atl. Operating Co. v. Evergreen Distribs., LLC*, No. 13-CV-4974 (ERK) (VMS), 2013 U.S. Dist. LEXIS 147835 (E.D.N.Y. Sep. 27, 2013) ...................................... 17

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 19

*National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824 (W.D.N.C. 2008) ............................................................................................... 23

*North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226 (S.D.N.Y. Mar. 30, 2006) ............................................................................................... 20

*Off-White LLC v. 5hk5584, et al.*, No. 19-cv-672-RA (S.D.N.Y. Jan. 24, 2019) .......................... 6

*Off-White LLC v. Adagio, et al.*, No. 19-cv-676-RA (S.D.N.Y. Jan. 24, 2019) ............................ 6

*Off-White LLC v. Ali Jr., et al.*, No. 19-cv-1775-PAE (S.D.N.Y. Feb. 26, 2019) ......................... 6

*Off-White LLC v. Amazon001, et al.*, No. 19-cv-2067-JMF (S.D.N.Y. Mar. 7, 2019) .................. 6

*Off-White LLC v. Baoding Springru Trade Co., Ltd., et al.*, No. 19-cv-674-RA (S.D.N.Y. Jan. 24, 2019) ............................................................................................... 6

*Off-White v. 6014350 et al.*, No. 18-cv-5322-GBD (S.D.N.Y. June 13, 2018) ............................. 7

*Off-White, LLC v. A445995685, et al.*, No. 18-cv-2009-LGS (S.D.N.Y. March 27, 2018) .......... 7

*P&G v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) .................................................. 14

*Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492 (2d Cir. 1961) ......................................... 13

*Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist.
    LEXIS 136790 (S.D.N.Y. Sep. 24, 2013) .......................................................................... 13

*Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. Mar. 11,
    2011) ...................................................................................................................................... 9

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No.
    17-cv-4884-KPF (S.D.N.Y. June 28, 2017) ........................................................................ 24

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ........................................................................ 16

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480 (S.D.N.Y.
    Feb. 8, 2009) ........................................................................................................................ 22

*Skyrocket, LLC d/b/a Skyrocket Toys LLC v. 2791383638, et al.*, No. 18-cv-11279-AT
    (S.D.N.Y. Dec. 4, 2018) ......................................................................................................... 6

*Skyrocket, LLC d/b/a Skyrocket Toys LLC v. 5ATOY Store, et al.*, No. 18-cv-11280-AT
    (S.D.N.Y. Dec. 4, 2018) ......................................................................................................... 6

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006) ................. 4

*Spin Master Ltd. and Spin Master, Inc. v. 13385184960@163.com, et al.*, Case No. 18-
    cv-10524-LGS (S.D.N.Y. Nov. 13, 2018) ............................................................................ 6

*Spin Master Ltd. and Spin Master, Inc. v. 158, et al.*, No. 18-cv-1774-PAE (Feb. 27,
    2018) ...................................................................................................................................... 7

*Spin Master Ltd. and Spin Master, Inc. v. 21CCN, et al.*, No. 18-cv-11086-RA (S.D.N.Y.
    Nov. 29, 2018) ....................................................................................................................... 6

*Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.*, No. 18-cv-543-PGG, Dkt. 16
    (S.D.N.Y. Jan. 22, 2018) ....................................................................................................... 7

*Spin Master Ltd., et al v. Alvy, et al.*, No. 19-cv-3452-LGS (S.D.N.Y. Apr. 24, 2019) ................ 6

*Stora v. Don't Ask Why Outfitters*, 2016 U.S. Dist. LEXIS 170172, at *12 (E.D.N.Y. Dec.
    7, 2016) ................................................................................................................................ 15

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) .......................... 22

*Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE (S.D.N.Y. Aug. 22,
    2018) ...................................................................................................................................... 6

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002) .................... 6

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................................ 12

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003) .................................................................................................................................. 15

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515 (S.D.N.Y. 2011); ........... 16

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ..................... 18

*Warner Bros. Entm't Inc. v. Doe*, No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014) ........................................................................................ 20

*William Mark Corporation v. 1&cc, et al.*, No. 18-cv-3889-RA (S.D.N.Y. May 2, 2018) ........... 7

*William Mark Corporation v. 1104520362, et al.*, No. 18-cv-6715-PAC (S.D.N.Y. July 26, 2018) .................................................................................................................... 6

*WOW Virtual Reality, Inc. v. 2013\*passionate, et al.*, No. 18-cv-8071-VEC (S.D.N.Y. Sept. 5, 2018) .................................................................................................................... 6

*WOW Virtual Reality, Inc. v. Bienbest, et al.*, No. 18-cv-3305-VEC (S.D.N.Y. April 17, 2018) .................................................................................................................................. 7

*WowWee Group Limited, et al. v. Meirly, et al.*, No. 18-cv-706-AJN (S.D.N.Y. Jan. 26, 2018) .................................................................................................................................. 7

*Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101 (2d Cir. 2001) .................................................. 14

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009) .................................................... 17

**Statutes**

15 U.S.C. § 1057(b) ...................................................................................................................... 13

15 U.S.C. § 1116(d)(1)(a) ............................................................................................................. 11

15 U.S.C. § 1117(a) ...................................................................................................................... 19

17 U.S.C. § 410(c) ........................................................................................................................ 14

17 U.S.C. § 501(a) ........................................................................................................................ 13

Consolidated Appropriations Act, 2021, Pub. L. 116-260 ........................................................... 17

Fed. R. Civ. P. 26(d)(1) ................................................................................................................ 24

Fed. R. Civ. P. 4 .......................................................................................................... 9, 21, 22, 23

Fed. R. Civ. P. 65(b) ..................................................................................................................... 10

N.Y. C.P.L.R. § 302 ........................................................................................................................ 3

**Other Authorities**

The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents
        in Civil and Commercial Matters, November 15, 1965, Article....................................... 22

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiffs** | Moonbug Entertainment Limited ("Moonbug") and Treasure Studio Inc. ("Treasure") |
| **Defendants** | ama_store, bbbridge2019, bestproducts4you, bimba_online, comebbon, feelgood_stores, gitsamar0, gtfstore, happyhome-depot, lishuguang001, luckyday418, mallawaarachchi.store, mwzuk, ngt.h11, qingyun1688888, roskum_1328, seours-astro, shanikprasad0, shanka-1987, sinekageek-73, tharathap-0, thimira, thushastores, urlinens121, victorxing1978 and xuanhu_70 |
| **eBay** | eBay.com, a San Jose, California-based online marketplace and e-commerce platform owned by eBay Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale and/or sell in what it characterizes as either auction-style or fixed-price formats and ship their retail products, which, upon information and belief, originate from China,  among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including in New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiffs |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiffs' Complaint |
| **Application** | Plaintiffs' e*x parte* application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Ahton Dec.** | Declaration of Karine Ahton in Support of Plaintiffs' Application |
| **Ioannou Dec.** | Declaration of Karena K. Ioannou in Support of Plaintiffs' Application |
| **CoComelon Content** | A popular streaming media show and YouTube channel featuring 3D animation videos of both traditional nursery rhymes and original children's |

| | |
|---|---|
| | songs |
| **CoComelon Applications** | U.S. Trademark Serial Application Nos.:  88/945,840 for "  " for goods in Class 3; 88/681,276 for "  " for goods in Class 25; 88/681,270 for "  " for goods in Class 9; 88/681,262 for "COCOMELON" for goods in Class 28; 88/681,248 for "COCOMELON" for goods in Class 9; 88/681,280 for "  " for goods in Class 28 and 88/681,253 for "COCOMELON" for goods in Class 25 |
| **CoComelon Registrations** | U.S. Trademark Registration Nos.: 6,375,368 for "COCOMELON" for goods in Class 16;  5,918,526 for "  " for goods in Classes 9 and 41; 5,830,142 for "COCOMELON" for goods in Classes 9 and 41; 6,421,553 for "COCOMELON" for goods in Class 28;6,521,784 |

| | |
|---|---|
| | for "COCOMELON" for goods in Class 25 and  6,563,758 for "  " for goods in Class 25 |
| **CoComelon Marks** | The marks covered by the CoComelon Registrations and CoComelon Applications |
| **CoComelon Works** | U.S. Copyright Registration Nos.: VAu 1-379-978 covering JJ; VAu 1-322-038 covering Unpublished Family Characters 2017 and VAu 1-319-613 covering Animal Characters 2017 |
| **CoComelon Products** | A variety of consumer products including toys, apparel, backpacks and other gear |
| **Counterfeit Products** | Products bearing or used in connection with the CoComelon Marks and/or CoComelon Works, and/or products in packaging and/or containing labels and/or hang tags bearing the CoComelon Marks and/or CoComelon Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the CoComelon Marks and/or CoComelon Works and/or products that are identical or confusingly or substantially similar to the CoComelon Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as eBay, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all |

| | persons in active concert or participation with any of them |
|---|---|
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by eBay, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

# I.  __INTRODUCTION__

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiffs submit this memorandum of law in support of their *ex parte* Application in light of Defendants' intentional and willful offering for sale and/or sales of Counterfeit Products.[1]  Courts grant *ex parte* applications for relief in similar matters[2] and Plaintiffs request that the Court grant their Application.

eBay is an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York. (Ioannou Dec., ¶ 3). Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their respective User Accounts and Merchant Storefronts on the Third Party Service Providers. (Ahton Dec., ¶¶ 19-20; Ioannou Dec., ¶¶ 16-17, Ex. A).  Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and market, distribute and ship such products to consumers throughout the world, including New York.  (Ahton Dec., ¶ 20; Ioannou Dec., ¶ 23, Ex. A).  Third-party merchants, like Defendants, often use evasive tactics like aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection.  (Ioannou Dec., ¶¶ 12-14).  In fact, Defendants' User Accounts and Merchant

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

[2] *See In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *see also, e.g.*, *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018); *Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF), Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015); *AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012).

Storefronts are either devoid of any or contain incomplete information regarding Defendants' true identities, locations and contact information, making it virtually impossible for Plaintiffs to obtain independently. (Ioannou Dec., ¶¶ 25-26).

Without Plaintiffs' authorization or consent, Defendants were and/or currently are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to consumers located in the U.S., including New York, through their Merchant Storefronts. (Ahton Dec., ¶¶ 19-20; Ioannou Dec., ¶¶ 3, 16-17, Ex. A). Defendants' aforementioned actions have caused and will continue to cause irreparable harm to Plaintiffs' goodwill and reputation as well as to the unassuming consumers who will continue to believe that Defendants' inferior and potentially dangerous Counterfeit Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiffs, when, in fact, they are not. (Ahton Dec., ¶ 22).

Plaintiffs' request for *ex parte* relief is particularly necessary because if Defendants receive notice of this Lawsuit, it is highly likely that they will transfer, conceal and/or destroy 1) the Counterfeit Products, 2) the means of making or obtaining such Counterfeit Products, 3) business records and 4) any and all other evidence relating to their infringing activities. (Ioannou Dec., ¶ 14). Moreover, they will likely hide or dispose of Defendants' Assets. *Id.* In light of the foregoing, and considering that it typically takes noticed Financial Institutions and/or Third Party Service Providers a minimum of five (5) days to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts, Plaintiffs respectfully request that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendants.

## II.   STATEMENT OF RELEVANT FACTS

The facts are contained in the factual declarations of Karine Ahton and the attorney summarizing declaration of Karena K. Ioannou, plus accompanying exhibits.  *See* Ahton Dec.; Ioannou Dec.; Complaint, Exs. A-D.  In the interest of brevity, any factual discussion is contained in the legal analysis below.[3]

## III.   ARGUMENT

### A.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry.  First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).  Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution.  *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As alleged herein, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1).[4]  Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

---

[3] Although Plaintiffs acknowledge that they seek multiple forms of relief, in the interest of brevity and with respect for the Individual Rules and Practices in Civil Cases of each District Judge in the Southern District of New York, Plaintiffs respectfully submit this memorandum of law in support of their Application. Plaintiffs will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

[4] Plaintiffs respectfully submit that Defendants are also subject to jurisdiction under § 302(a)(3).  *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).  However, this alternative analysis is omitted for brevity.  Plaintiffs will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

1.  **Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)**

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions … tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted).  The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted).  Rather, it is sufficient that "the latter is not completely unmoored from the former." *Id.*

In determining whether a party has "transacted business," New York courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the

4

Internet." *Id.*  Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world to communicate with Defendants and view and purchase products, including Counterfeit Products, as demonstrated by the checkout pages completed by Epstein Drangel and Epstein Drangel's purchase of Counterfeit Products. (Ioannou Dec., ¶¶ 16-17, 23-24, Ex. A); *see also Chloe*, 616 F.3d at 170.

This Circuit has exercised jurisdiction over defendants under § 302(a)(1) where such defendants regularly offer for sale and sell goods through online marketplaces, "even though Defendants do not control their [] 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 *7 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 *8 (E.D.N.Y. June 4, 2012).[5]  Jurisdiction is proper "for internet sellers who use an internet storefront like Amazon," when the Internet sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id*. at *8.  In *Lifeguard Licensing Corp.*, Judge Schofield held that a "website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)." *Id*. at *7. (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) and *Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 at *3 (S.D.N.Y. May 1, 2016) (holding that interactive commercial

---

[5] *See also supra* fn. 4.

websites provides support for jurisdiction pursuant to CPLR § 302(a)(1))). Moreover, "[r]egularly

offering and selling goods via an online marketplace such as Amazon.com can provide a basis for

personal jurisdiction under CPLR § 302(a), even though Defendants do not control their

Amazon.com 'storefront' or its interactivity to the same extent that they control their own highly

interactive website." *Id*. at *8.  If a defendant

> wishes to operate an interactive website accessible in New York, there is no
> inequity in subjecting [that defendant] to personal jurisdiction here.  If [a
> defendant] does not want its website to subject it to personal jurisdiction here,
> it is free to set up a passive website that does not enable [that defendant] to
> transact business in New York.

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002).[6]

---

[6] This Court has repeatedly found personal jurisdiction over defendants based in China who are operating Merchant Storefronts on online marketplace platforms, such as Alibaba, AliExpress, Wish and eBay. *See, e.g.*, *Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. 545756338, et. al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019); *Spin Master Ltd., et al v. Alvy, et al.*, No. 19-cv-3452-LGS (S.D.N.Y. Apr. 24, 2019); *Allstar Marketing Group, LLC v. 178623, et al.*, 19-cv-3186-AJN (S.D.N.Y. Apr. 10, 2019); *Allstar Marketing Group, LLC v. 123 Beads Store, et al.*, 19-cv-3184-AJN (S.D.N.Y. Apr. 10, 2019); *Allstar Marketing Group, LLC v. bigbigdream320, et al.*, 19-cv-3182-AJN (S.D.N.Y. Apr. 10, 2019); *Off-White LLC v. Amazon001, et al.*, No. 19-cv-2067-JMF (S.D.N.Y. Mar. 7, 2019); *Off-White LLC v. Ali Jr., et al.*, No. 19-cv-1775-PAE (S.D.N.Y. Feb. 26, 2019); *Off-White LLC v. Adagio, et al.*, No. 19-cv-676-RA (S.D.N.Y. Jan. 24, 2019); *Off-White LLC v. Baoding Springru Trade Co., Ltd., et al.*, No. 19-cv-674-RA (S.D.N.Y. Jan. 24, 2019); *Off-White LLC v. 5hk5584, et al.*, No. 19-cv-672-RA (S.D.N.Y. Jan. 24, 2019); *Mattel, Inc. v. 2012shiningroom2012, et al.*, No. 18-cv-11648-PKC (S.D.N.Y. Dec. 13, 2018); *Mattel, Inc. v. 2013CheapBuy, et al.*, No. 18-cv-11647-PKC (S.D.N.Y. Dec. 13, 2018); *Mattel, Inc. v. betterlover, et al.*, No. 18-cv-11644-PKC (S.D.N.Y. Dec. 13, 2018); *Skyrocket, LLC d/b/a Skyrocket Toys LLC v. 5ATOY Store, et al.*, No. 18-cv-11280-AT (S.D.N.Y. Dec. 4, 2018); *Skyrocket, LLC d/b/a Skyrocket Toys LLC v. 2791383638, et al.*, No. 18-cv-11279-AT (S.D.N.Y. Dec. 4, 2018); *Spin Master Ltd. and Spin Master, Inc. v. 21CCN, et al.*, No. 18-cv-11086-RA (S.D.N.Y. Nov. 29, 2018); *Spin Master Ltd. and Spin Master, Inc. v. 13385184960@163.com, et al.*, Case No. 18-cv-10524-LGS (S.D.N.Y. Nov. 13, 2018); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF (S.D.N.Y. Nov. 9, 2018); *Mattel, Inc. v. Aaron's Fashion Store, et al.*, Case No. 18-cv-10437-KPF (S.D.N.Y. Nov. 9, 2018); *Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427 (S.D.N.Y. Nov. 9, 2018); *Ideavillage Products Corp. v. OhmyGod 1, et al.*, No. 18-cv-9999-RA (S.D.N.Y. Nov. 15, 2018); *Ideavillage Products Corp. v. 1yuyan1, et al.*, No. 18-cv-10000-NRB (S.D.N.Y. Oct. 30, 2018); *Moose Toys Pty LTD, et al. v. adition, et al.*, No. 18-cv-9262-AJN (S.D.N.Y. Oct. 10, 2018); *Allstar Marketing Group, LLC v. 24x7, et al.*, No. 18-cv-9043-JSR (S.D.N.Y. Oct. 3, 2018); *Mattel, Inc. v. 162275898, et al.*, No. 18-cv-8821-AJN (S.D.N.Y. Sept. 26, 2018); *WOW Virtual Reality, Inc. v. 2013*passionate, et al.*, No. 18-cv-8071-VEC (S.D.N.Y. Sept. 5, 2018); *Ideavillage Products Corp. v. 711market, et al.*, No. 18-cv-7832-JMF (S.D.N.Y. Aug. 28, 2018); *Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE (S.D.N.Y. Aug. 22, 2018); *Ideavillage Products Corp. v. longteng, et al.*, No. 18-cv-7329-AT (S.D.N.Y. Aug. 14, 2018); *Ideavillage Products Corp. v. 666668, et al.*, No. 18-cv-6850-CM (S.D.N.Y. July 31, 2018); *William Mark Corporation v. 1104520362, et al.*, No. 18-cv-6715-PAC (S.D.N.Y. July 26, 2018); *Ideavillage Products Corp. v. 207058772, et al.*, No. 18-cv-6512-VM (S.D.N.Y. July 19, 2018); *Ideavillage Products Corp. v. 29shyans2012, et al.*, No. 18-cv-6266-AT (S.D.N.Y. July 11, 2018); *Off-White v. 6014350 et al.*,

Further, in *EnviroCare Techs.*, the court held that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." 2012 U.S. Dist. LEXIS 78088 at *9 (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.")) Similarly, in *Chloe, supra*, the Second Circuit found that while the single act of shipping a counterfeit product might be sufficient to subject him to the jurisdiction of a New York court, it did not need to delve into such an inquiry as the defendant "operated a highly interactive website offering [counterfeit products] for sale to New York consumers." *Chloe*, 616 F.3d 158, 170.

In some circumstances, courts in the Second Circuit have found that "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3." *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009). In *McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018), this Court found personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online. *McGraw-Hill* cited to *Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 at *3 (S.D.N.Y. Jul. 26, 2012) for the proposition that "if a website is interactive and allows

---

No. 18-cv-5322-GBD (S.D.N.Y. June 13, 2018); *Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018); *William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA (S.D.N.Y. May 2, 2018); *WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC (S.D.N.Y. April 16, 2018); *Ideavillage Products Corp. v. abc789456, et al.,* No. 18-cv-2962-NRB (S.D.N.Y. April 11, 2018); *Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739-JGK (S.D.N.Y. April 11, 2018); *Moose Toys Pty Ltd. et al., v. 963, et al.,* No. 18-cv-2187-VEC (S.D.N.Y. April 2, 2018); *Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS (S.D.N.Y. March 27, 2018); *Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE (Feb. 27, 2018); *JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018); *Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG (S.D.N.Y. Jan. 22, 2018); *WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN (S.D.N.Y. Jan. 26, 2018); *Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG (S.D.N.Y. Feb. 1, 2018).

a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." *See also*, *Hsin Ten Enter.*, 138 F. Supp. 2d 449, 456 ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

Here, Defendants operate interactive Merchant Storefronts on eBay, allowing New York consumers to inquire and communicate with Defendants, purchase goods, including Counterfeit Products, by and through Defendants' listings, and upon completion of a sale, ship goods to New York. The fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Counterfeit Products through their Merchant Storefronts alone supports a finding that Defendants have intentionally used eBay "as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at *10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)). Moreover, the fact that Defendants are offering the Counterfeit Products through their Merchant Storefronts at significantly below-market prices coupled with the fact that most of their User Accounts reflect multiple sales to consumers across the world, including repeat sales to consumers in the U.S., confirms that Defendants are sophisticated sellers operating commercial businesses through eBay, such that they are subject to jurisdiction. *Id*. at *10.

It is highly likely that Defendants have shipped Counterfeit Products to consumers in New York based on the following: 1) Epstein Drangel completed a checkout page for an order of Counterfeit Products from each and every Defendant through an account associated with the New York Address, 2) Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants to New York, 3) and all Defendants accept payment in U.S. dollars. (Ioannou Dec., ¶¶ 16-17, 19, 23-24, Ex. A).

Nevertheless, whether a defendant physically shipped Counterfeit Products into New York is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state under § 302(a)(1). *Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249, at * 6 (E.D.N.Y. Mar. 11, 2011). Plaintiffs and Epstein Drangel have viewed Defendants' Counterfeit Products via their online User Accounts and Merchant Storefronts. (Ahton Dec., ¶ 20; Ioannou Dec., ¶¶ 16-17, Ex. A). Epstein Drangel then completed checkout pages for Counterfeit Products by providing the New York Address as the shipping address.[7] (Ioannou Dec., ¶¶ 22-23, Ex. A). Further, Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants into New York. *Id.* Thus, Defendants' sophisticated commercial operations, specifically including their offering for sale and/or selling of Counterfeit Products through their highly interactive User Accounts and Merchant Storefronts on eBay, Epstein Drangel's completion of checkout pages with the New York Address, Epstein Drangel's purchase of Counterfeit Products, along with Defendants' own representations on their Merchant Storefronts that they ship Counterfeit Products to the U.S., including New York, unequivocally establishes that Defendants conduct business within this District and the claims in this suit arise from Defendants' business dealings and transactions with consumers in New York.[8] (Ioannou Dec., ¶¶ 16-17, 23-24, Ex. A).

---

[7] Under case law of the Second Circuit, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry", and while a website's interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" … "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.*, 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004) (internal citation omitted)).

[8] Plaintiffs respectfully submit that the Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which "provides for jurisdiction over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and laws of the United States." *Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005).

2. <u>**Exercising Personal Jurisdiction Over Defendants Comports with Due Process**</u>

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts … such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)). Defendants intentionally directed activity towards the New York market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985). *See Best Van Lines, Inc.*, 490 F.3d at 243. Ioannou Dec., ¶¶ 23-24, Ex. A). Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, Plaintiffs respectfully submit that this Court has personal jurisdiction over Defendants in this action.

B.    **PLAINTIFFS ARE ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Here, an *ex parte* order is essential to prevent immediate and irreparable injury to Plaintiffs. A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b). Section 34 of the Lanham Act expressly authorizes this Court to issue *ex parte* restraining orders "with respect to a violation [of the Act] that consists of using a counterfeit mark in connection with the sale, offering

for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(a).[9]

Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* order is appropriate upon showing that: (i) the plaintiff will provide adequate security; (ii) any order other than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the plaintiff has not publicized the requested *ex parte* order; (iv) the plaintiff is likely to succeed on showing that defendants are using counterfeit marks; (v) an immediate and irreparable injury will occur if such *ex parte* order is not granted; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the plaintiff in denying the application outweighs the harm to defendants in granting the order and (viii) if prior notice was given, defendants would destroy, move, hide or otherwise make such matter inaccessible to the court. 15 U.S.C. § 1116(d)(4)(B). As discussed below, Plaintiffs meet each of the relevant criteria for the issuance of an *ex parte* temporary restraining order under the Lanham Act.[10]

An *ex parte* temporary restraining order is particularly warranted in cases, such as the instant one, involving offshore counterfeiters who conceal their identities and engage in unlawful and harmful activities over the Internet to avoid revealing their actual locations and identities. (Ioannou Dec., ¶¶ 12-14, 25-26). Defendants, who, upon information and belief, are located in China and operate their businesses exclusively over the Internet, knowingly and willfully offer for sale and/or sell Counterfeit Products through their User Accounts and on their Merchant Storefronts on eBay. (Ahton Dec., ¶¶ 19-20; Ioannou Dec., ¶¶ 3, 16-17). The covert nature of

---

[9] Congress' purpose for enacting such *ex parte* remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters given prior notice from disappearing or quickly disposing of infringing inventory or records relating to their counterfeiting and illegal actions. *See* Senate-House Joint Explanatory Statement on trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).

[10] Plaintiffs have expressed their willingness to provide security in conjunction with the *ex parte* relief they seek. *See* [Proposed] Order, filed herewith. Plaintiffs have certified that they have not publicized this Application. (Ahton Dec., ¶ 26). Also, since Defendants' location and the location of the Counterfeit Products are unclear, Plaintiffs are not requesting a seizure order in this Application. (Ioannou Dec., ¶¶ 12-13).

Defendants and their counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility. The immediate and irreparable harm to Plaintiffs' business and reputation, as well as to the goodwill associated with the CoComelon Works and CoComelon Marks, in denying their Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interests in continuing to offer for sale and sell Counterfeit Products. (Ahton Dec., ¶ 24).

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)). The "standards which govern consideration of an application for a temporary restraining order… are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). Plaintiffs meet the standard for a preliminary injunction and the Court should enter a temporary restraining order.

### 1.  Plaintiffs are Likely to Prevail on the Merits of Their Lanham Act Claims

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).

First, the U.S. Trademark Registration certificates submitted in conjunction with this Application provide *prima facie* evidence of both the validity of the CoComelon Marks as well as

Plaintiffs' ownership of the same. 15 U.S.C. § 1057(b). (Ahton Dec., ¶ 9, Ex. B).

Second, a proper likelihood of confusion inquiry generally involves an analysis of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492, 495 (2d Cir. 1961). Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted). Instead, "[t]he court need only determine the more fundamental question of whether there are items to be confused in the first place -- that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id.* at 383 (internal citations omitted). Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

Finally, because Plaintiffs have shown that they are likely to prevail on their trademark counterfeiting and trademark infringement claims, they have also shown that they likely will prevail on their claims for false designation of origin, passing off and unfair competition. *Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790, at *14-16 n.15 (S.D.N.Y. Sep. 24, 2013).

**2.  Plaintiffs are Likely to Prevail on Their Copyright Act Claims**

Under 17 U.S.C. § 501(a), in order to show likelihood of success on the merits of a copyright infringement claim, a given plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991)). As detailed below, Defendants have infringed upon the CoComelon Works.

### a)  *Plaintiffs own Valid Copyrights in the CoComelon Works*

With respect to ownership, "[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Mint, Inc. v. Iddi Amad*, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813, at \*6 (S.D.N.Y. May 9, 2011); *see also* 17 U.S.C. § 410(c). Thus, Plaintiffs' certificates of registration for the CoComelon Works are *prima facie* evidence of the validity of the copyrights and the facts stated in such registrations.  (Ahton Dec., ¶ 12, Ex. C).

### b)  *Defendants Infringed the CoComelon Works*

To establish infringement, "the copyright owner must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible [sic] elements of plaintiff's [work]." *Yurman Design, Inc. v. PAJ Inc.,* 262 F.3d 101, 110 (2d Cir. 2001).

A plaintiff may demonstrate actual copying "either by direct or indirect evidence."  *P&G v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) (internal citations omitted).  "Indirect copying may be shown by demonstrating that the defendant had access to the copyrighted work and that the similarities between the works are probative of copying."  *Id*.

A representative sample of side-by-side comparisons of Plaintiffs' CoComelon Works to Defendants' Counterfeit Products and/or Defendants' Infringing Listings illustrates that Defendants are copying one or more of the CoComelon Works by reproducing and/or displaying substantially similar, if not identical, imitations of the CoComelon Works either embodied in the Counterfeit Products themselves and/or in connection with the offering for sale and/or sale of Counterfeit Products.  (Ahton Dec., ¶¶ 20-21; and Ioannou Dec., ¶¶ 17-18, Ex. B).  Defendants have taken the original and well-known elements of the CoComelon Works and used the same and/or elements thereof in Defendants' Infringing Listings for their Counterfeit Products.

(Ioannou Dec., ¶¶ 16-18, Exs. A, B).    Defendants' imitations of the CoComelon Works are virtually indistinguishable therefrom, which, coupled with Plaintiffs' significant and widespread advertising efforts, show that Defendants unquestionably had "access" to the CoComelon Works. *See id.*; *Mint, Inc.*, 2011 U.S. Dist. LEXIS 49813, at *7; and *Stora v. Don't Ask Why Outfitters,* 2016 U.S. Dist. LEXIS 170172, at *12 (E.D.N.Y. Dec. 7, 2016).  Plaintiffs have demonstrated, at a minimum, "evidence of a reasonable possibility of access" through its widespread use of its CoComelon Works as well as the extensive advertising and widespread distribution of the CoComelon Products. *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).  This demonstrates that Plaintiffs' assertion of Defendants' access to the CoComelon Works is more than mere speculation.

Further, Defendants' infringing use of the CoComelon Works is clearly more than *de minimis*.  Defendants have taken entire and/or core elements of the CoComelon Works and have used these, or nearly identical replicas thereof, in connection with the advertising, marketing, distributing, offering for sale and/or sale of the infringing products.  In many instances, Defendants have directly copied one or more of the individual components of the CoComelon Works and have used such elements together in Defendants' Infringing Listings.  (Ioannou Dec., ¶¶ 16-18, Exs. A, B).  Thus, Plaintiffs have established substantial similarity between the CoComelon Works and Defendants' imitations, and that Defendants copied the same.  *See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003).  Accordingly, Plaintiffs respectfully submits that they are likely to succeed on the merits of their copyright claims.

### 3. <u>Plaintiffs are Likely to Prevail on Their State Law Claims</u>

Because Plaintiffs have shown a likelihood of success on their Lanham Act claims, Plaintiffs have also shown a likelihood of success on their unfair competition and unjust

enrichment claims under New York State law. *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

### 4. Plaintiffs are Entitled to a Presumption of Irreparable Harm and Regardless Have Established They Will Suffer Irreparable Harm in the Absence of an Injunction

Defendants' infringing activities must be stopped immediately to prevent any further harm to Plaintiffs. Not only do Plaintiffs stand to suffer lost profits as a result of Defendants' competing, substandard Counterfeit Products, Defendants' illicit activities destroy the inherent value of the CoComelon Marks and CoComelon Works, impair Plaintiffs' reputation, dilute Plaintiffs' brands and goodwill and negatively affect Plaintiffs' relationships with its current customers as well as their ability to attract new customers. (Ahton Dec., ¶ 24).

"Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 540 (S.D.N.Y. 2011). Further, a plaintiff may still demonstrate that "on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)).

This Circuit recognizes that irreparable harm sufficient to warrant a preliminary injunction exists where a defendant injected counterfeit versions of a plaintiff's products into the market. *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011). Here, Defendants have sold substandard Counterfeit Products that look remarkably similar, if not identical, to the CoComelon Products and which embody, bear and/or incorporate the CoComelon Marks and/or CoComelon Works and/or identical, substantially or confusingly similar marks, thereby resulting in lost sales and impairing Plaintiffs' "reputation that it has achieved through the expenditure of

considerable time and effort." *Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745, 2015 U.S. Dist. LEXIS 18801 at *8 (E.D.N.Y. Feb. 17, 2015) (quoting *N. Atl. Operating Co. v. Evergreen Distribs., LLC*, No. 13-CV-4974 (ERK) (VMS), 2013 U.S. Dist. LEXIS 147835, at *37 (E.D.N.Y. Sep. 27, 2013)); *see also* (Ahton Dec., ¶ 22-24; Ioannou Dec., Ex. B). Moreover, Defendants' counterfeiting and infringing activities deny Plaintiffs of their fundamental right to control the quality of the goods sold under the CoComelon Marks and CoComelon Works. *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009).

Also, because Defendants' substandard Counterfeit Products are virtually indistinguishable from the CoComelon Products, not only could any injury to consumers that results from use of Defendants' substandard Counterfeit Products be attributed to Plaintiffs, thereby causing irreparable harm to Plaintiffs in the form of unquantifiable lost sales, loss of goodwill and loss of control of its reputation with authorized licensees, retailers and consumers, but Plaintiffs would also potentially be exposed to legal liability for any such injury to consumers. (Ahton Dec., ¶ 24). Thus, this factor weighs heavily in Plaintiffs' favor.

While Plaintiffs have established they will suffer irreparable harm in the absence of an injunction, Plaintiffs are also entitled to a rebuttable presumption of irreparable harm as they are likely to succeed on the merits of their Lanham Act claims. On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law. The Act, *inter alia*, amended the text of 15 U.S.C. § 1116(a) codified a rebuttable presumption of irreparable harm which, as amended, now reads in relevant part:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and

Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. ***A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order***.

*See Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021).

Accordingly, since Plaintiffs have established that they are likely to succeed on the merits of their claims under 15 U.S.C. § 1125(a), Plaintiffs are entitled to a presumption of irreparable harm.

### 5.  The Balance of Hardships Favors Plaintiffs

The balance of hardships unquestionably and overwhelmingly favors Plaintiffs.  Here, as described above, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their business, the value, goodwill and reputation built up in and associated with the CoComelon Works and CoComelon Marks and to their reputation as a result of Defendants' willful and knowing sales of substandard imitations of the CoComelon Products. (Ahton Dec., ¶ 24).  Any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities.  "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (internal citation omitted).

### 6.  Enjoining Defendants from Using the CoComelon Works and CoComelon Marks Will Serve the Public Interest

The public interest will be served by the issuance of a temporary restraining order and

preliminary injunction, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of the CoComelon Products bearing and/or sold in connection with the CoComelon Works and/or CoComelon Marks. (Ahton Dec., ¶ 24; Ioannou Dec., ¶¶ 16-18, Exs. A, B). Since Defendants have willfully and knowingly inserted substandard Counterfeit Products into the marketplace, the public would benefit from a temporary restraining order and preliminary injunction halting any further sale and distribution of Defendants' Counterfeit Products. (Ioannou Dec., ¶¶ 16-17, Ex. A).

## C. PLAINTIFFS ARE ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS

### 1. <u>Defendants' Assets Must be Frozen</u>

Considering the nature of Defendants' counterfeiting businesses, and Plaintiffs' showing that they have a high likelihood of succeeding on the merits of all of their claims, Plaintiffs will be entitled to an equitable accounting of Defendants' profits from their sales of Counterfeit Products. Plaintiffs' request for an asset freeze order granting Plaintiffs information regarding the location of Defendants' Assets, the attachment of Defendants' Assets and an injunction preventing the transfer from or to Defendants' Financial Accounts by the Financial Institutions and Third Party Service Providers is both necessary and appropriate, and is within this Court's discretion to preserve Plaintiffs' right to the relief sought in the Complaint. *See* 15 U.S.C. § 1117(a).[11]

---

[11] *See also*, *e.g.*, *Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010).

District courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted). In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. The onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits aren't from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 131-132 (2d Cir. 2014) (A copyright and/or trademark "infringer is required in equity to account for and yield up his gains to the true owner," and "profits are then allowed as an equitable measure of compensation."). Specifically, with respect to claims involving the infringement of federally registered copyrighted works and/or those arising under the Lanham Act, it has been established in this Circuit, as well as sister circuits, that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign individuals and/or entities based in China, are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers solely via the Internet, and accepting payment for such Counterfeit Products in U.S. Dollars through Financial Institutions, thereby causing irreparable

harm to Plaintiffs in the form of lost sales, loss of goodwill and loss of control of their reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. (Ahton Dec., ¶ 24); *see also Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).[12]   Therefore, Plaintiffs respectfully submit that this Court should exercise its inherent equitable power and freeze Defendants' Assets and Defendants' Financial Accounts for the purpose of preserving Defendants' funds and ensuring that a meaningful accounting of their profits can be made.[13]

### 2.  Defendants' User Accounts and Merchant Storefronts Must be Frozen

A temporary restraining order which, in part, restrains the Third Party Service Providers from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Counterfeit Products by Defendants on their Merchant Storefronts will result in immediate and irreparable injury to Plaintiff. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

### D. PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS

Fed. R. Civ. P. (4) governs service on Defendants in the instant matter since, upon information and belief, they are located in China.   While Defendants operate sophisticated commercial businesses, they are limited to correspondence by email and communications otherwise transmitted over the Internet. (Ioannou Dec., ¶¶ 12-13).  Plaintiffs therefore respectfully

---

[12] *See also supra* fn. 2.
[13] Upon the entering of an asset freeze, Plaintiffs also request that the Court Order Defendants and/or the Financial Institutions and/or the Third-Party Service Providers to immediately identify Defendants' Assets and Defendants' Financial Accounts and the respective current account or fund balances of the same.

request that this Court issue an order granting them permission to serve each respective Defendant via the following combination of electronic methods: 1) registered electronic mail and 2) website publication.

Plaintiffs may serve international defendants pursuant to Fed. R. Civ. P. 4(f)(3), which enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015).  Since third-party merchants on eBay, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities and there are, in fact, no physical addresses whatsoever associated with Defendants' User Accounts, this is exactly the circumstance where the courts should exercise, as they previously have,[14] the authority to grant alternative methods of service. *Id*. "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Id*. [15]

In the instant matter, Plaintiffs propose using Outlook.com as well as Rmail (www.rmail.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the email was sent and received. (Ioannou

---

[14] *See Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *6-7; *AW Licensing, LLC*, 2015 U.S. Dist. LEXIS 177101, at *18-19; *FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *20 (S.D.N.Y. Mar. 7, 2013).

[15] Pursuant to Fed. R. Civ. P (4)(1), service may be affected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("Hague Convention").  Although China is a signatory to it, the Hague Convention "shall not apply where the address of the person to be served with the document is not known."  *See* Hague Convention, November 15, 1965, Article 1.  Moreover, despite China's objection to service by postal channels under Article 10, this Court has held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement.  *Sulzer Mixpac AG*, 312 F.R.D. at 332.

Dec., ¶ 29).  Along with service via email, Plaintiffs respectfully request that the Court, in its discretion, permit service via website publication.[16]

Ultimately, service on Defendants by various electronic means comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 309 (1950).  None of the Defendants have disclosed their mailing addresses. (Ioannou Dec., ¶¶ 12-14, 25-26).  Due to Defendants' purposeful anonymity, service by email, with confirmation of delivery by Rmail, and website publication is most likely to provide Defendants with proper notice of this action and Plaintiffs' claims. *Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *7.  Therefore, Plaintiffs respectfully submit that an order authorizing alternative service benefits all parties and the Court by ensuring that Defendants receive immediate notice of the pendency of this action to move forward expeditiously.[17]

### E.  PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiffs respectfully request that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and extent of Defendants' counterfeiting and infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, any and all User Accounts and any and all Merchant

---

[16] Publication on a website has been deemed appropriate service under Fed. R. Civ. P (4)(3) "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane*, 339 U.S. at 315-16).

[17] Plaintiffs also respectfully submit that the Court issue an order authorizing Plaintiffs to serve the Financial Institutions and/or Third Party Service Providers with notice of the Court's order of the Application via electronic means prior to serving Defendants and with enough time for the Financial Institutions and/or Third Party Service Providers to comply with the Court's order to help expedite the process.

Storefronts, including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1). In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted,[18] but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted). Regardless of which test, Plaintiffs have established that they are entitled to the expedited discovery requested for good cause shown. *See id*. at 327; (Ahton Dec., ¶ 24; Ioannou Dec., ¶¶ 12-14, 25-26).

### F.    PLAINTIFFS' REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Plaintiffs respectfully submit the provision of security in the amount of $5,000 is sufficient. *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017).[19]

### IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that their Application be granted *ex parte* in its entirety.

---

[18] *See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

[19] Moreover, this Court has gone as far as to hold that no security bond is necessary in similar circumstances. *See Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.")

Dated:  December 2, 2021

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____

Karena K. Ioannou
kioannou@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiffs*
*Moonbug Entertainment Limited and*
*Treasure Studio Inc*